730 F.2d 1389
 HORIZON CREDITCORP, a New Jersey corporation authorized to
do business in the State of Florida, Plaintiff-Appellee,
v.
OIL SCREW "INNOVATION I", her engine, tackle, apparel, etc.,
In rem, Defendant,
Michael R. and Mary E. Spielvogel, Claimants/Owners-Appellants.
 No. 82-5616.
 United States Court of Appeals,
Eleventh Circuit.
 April 26, 1984.
 
 Thomas D. Lardin, Weaver, Weaver & Lardin, Fort Lauderdale, Fla., for claimants/owners-appellants.
 Daniel A. Pollack, Frederick P. Schaffer, Edward T. McDermott, New York City, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before ANDERSON and CLARK, Circuit Judges, and DUMBAULD*, District Judge.
 DUMBAULD, District Judge:
 Appellants, Michael R. Spielvogel and Mary E. Spielvogel, his wife, bought a yacht on March 30, 1979, for $82,000 of which they paid $22,000 down and $50,000 was financed by appellee Horizon Creditcorp. The agreement provided for finance charges of $45,177.08, documentary fees of $197.60, resulting in a time balance of $95,374.08 and a time sales price of $117,374.08. The first monthly instalment of $662.32 was due on April 30, 1979. At Spielvogel's request, and in accordance with Horizon's customary practice, the interest was computed under the "Rule of 78ths," permitting accelerated deductions. Later, as he apparently had done in connection with an earlier transaction with another lender, he demanded computation of simple interest. By reason of this dispute or otherwise, no part of the debt to appellee was ever paid. On May 16, 1979, approximately 46 days after the purchase of the yacht, the lender exercised its right of repossession, having approximately a week earlier exercised its right of acceleration so as to make the whole debt payable.
 The Spielvogels sued Horizon in State court, and in due course the action was removed to the United States District Court for the Southern District of Florida, as Civil No. 79-6309. On April 2, 1980, Horizon filed Civil No. 80-6169, an admiralty proceeding seeking to foreclose a purported "First Preferred Ship Mortgage" on the yacht. Pursuant to the complaint in admiralty a warrant of arrest for seizure of the yacht was issued on April 2, 1980, and was executed a week later. On April 10, 1981, sale of the yacht to one Larry Ziegler for $45,000 was confirmed.
 On June 9, 1981, cases No. 79-6309 and No. 80-6169 were consolidated. On March 3, 1982, jury trial began and on March 5, 1983, a verdict was rendered in favor of Horizon. On March 30, 1982, the court entered the judgment herein appealed from in favor of appellee and against appellants, in the amount of $82,452.20 and releasing to appellee the fund in the registry of the court derived from the sale of the yacht. The last paragraph of the judgment stated that "nothing in this final judgment shall affect case number 79-6309-Civ-NCR which shall remain on this court's trial calendar." Both case numbers were listed in the caption, with a heading reading "FINAL JUDGMENT for CASE NO. 80-6169 Civ-NCR." Stay of execution was granted pending appeal.
 Appellants at all times have vigorously contended that no admiralty jurisdiction over Case No. 80-6169 exists, and no jurisdiction in personam justifying the money judgment against them.
 In the instant appeal they also argue that entry of the money judgment without a trial as to the amount of damages was a denial of due process; and that remarks by counsel to the jury require a new trial. We do not find either of these points persuasive.
 In the context of the issues of the case, clearly presented in the court's instructions,[1] it is quite far-fetched to argue as appellants do that counsel's references to "who gets the $50,000" did or could mislead the jury into thinking that Horizon would "forfeit" the whole amount if the jury found that the Spielvogels were not in default. Rather, as appellants argue in the same breath, "HORIZON was either entitled to accelerate or was not entitled to accelerate" (Brief, p. 31). If not entitled to accelerate and declare the whole debt due immediately, Horizon, as appellants say, "Would therefore have to accept monthly payments." But if, as Horizon's counsel was arguing, Horizonwas entitled to accelerate, it was entirely proper for Horizon's counsel to talk about "the $50,000" to which his client would then have a just claim under the terms of the agreement.
 Likewise, since the debt arises under a written agreement, it is almost equivalent to "liquidated damages." Once the jury had made the vital determination as to the occurrence of the event of default vel non, the court could readily mold the verdict into a computation of the amount to be awarded to appellee. Certum est quod reddi potest. No separate trial was required. Appellants made no objections to the calculations contained in the affidavit and proposed judgment submitted by appellee. There was no denial of due process.
 The written agreement specified clearly the amount due. Appellants did not set forth (either in the court below or in point III of their brief in this Court) any specific objections to the figures as computed in appellee's affidavit, or any serious contentions with respect to the quantum of damages. We cherish the time-honored right to jury trial as earnestly as the dissent [see, e.g. U.S. v. One 1976 Mercedes Benz, 280S, 618 F.2d 453, 468-69 (7th Cir.1980) ], in cases where the parties have timely raised and preserved any genuinely disputed issues to be tried. Here there were none. Appellants' demand for "trial by jury on all issues so triable" [dissent, p. 1393] did not generate any issue to be tried by a jury, but merely invoked that mode of trial for whatever issues were raised by the parties. Appellants did not formulate any issues regarding the amount of damages. Appellants' suggestion [dissent, p. 1394] that judgment be limited to the amount of proceeds of the sale of the vessel, unless a deficiency were subsequently established, raised no question of fact and was appropriately disregarded by the district court since the in rem admiralty case had been consolidated for trial and it was the in personam liability of appellants under the written agreement that was being adjudicated.
 The questions whether admiralty jurisdiction had been properly invoked and whether jurisdiction in personam over the Spielvogels could properly be exercised are more serious.
 It seems clear that before the Ship Mortgage Act of June 5, 1920, 41 Stat. 988, 1000, 46 U.S.C. Sec. 911, et seq., a mortgage on a vessel and a proceeding to enforce it, did not constitute a maritime matter that could be litigated under admiralty jurisdiction. Detroit Trust Co. v. The Barlum, 293 U.S. 21, 32, 55 S.Ct. 31, 33, 79 L.Ed. 176 (1934); The J.E. Rumbell, 148 U.S. 1, 15, 13 S.Ct. 498, 501, 37 L.Ed. 345 (1893); Bogart v. The John Jay, 58 U.S. 399, 15 L.Ed. 95, 17 How. 399, 402 (1854). The Act of 1920 conferred admiralty jurisdiction in rem with respect to a particular class of "preferred mortgages," 46 U.S.C. Sec. 951. It also provided that upon default of a "preferred mortgage" jurisdiction in personam against the mortgagor could be invoked, 46 U.S.C. Sec. 954.
 As stated by Chief Justice Hughes in The Barlum, (293 U.S. at 33, 55 S.Ct. at 32) supra:
 
 
 1
 The grant is thus one of exclusive jurisdiction to enforce the lien of a "preferred mortgage." If the mortgage is a preferred mortgage within the definition of the Act, jurisdiction is granted; otherwise not. "Preferred mortgages" are carefully defined in the detailed provisions of ... 46 U.S.C. 922.
 
 
 2
 The requirements of Sec. 922 are then described in the opinion. These include, inter alia, endorsement of the mortgage upon the vessel's documents; recording in the office of the collector of customs [now by Executive Order the Secretary of the Treasury]; and filing an affidavit of good faith.
 
 
 3
 It is highly questionable whether these criteria have been met in the case at bar. The documents executed on March 30, 1979, contemplated that such a preferred mortgage should be executed and delivered for the lender's protection. Indeed appellants signed a power of attorney authorizing three named individuals, or any of them, to execute and deliver such a mortgage, and one of them did on July 11, 1977, execute such an instrument. But no proof appears in the record that the above-enumerated requirements of the Act were complied with. Indeed, from admissions made by appellee in the course of discovery it appears that as late as November 17, 1979, the yacht had not been officially documented as a vessel of the United States, upon whose documents the fact of recording the mortgage could be noted as required by 46 U.S.C. Sec. 922.
 
 
 4
 It is not necessary to decide this doubtful question, however, in order to sustain the District Court's judgment in personam against appellants.[2] That question indeed has become moot by reason of the consolidation of No. 79-6309 and No. 80-6169 for trial. In No. 79-6309 appellants themselves had invoked the District Court's jurisdiction, and the Court clearly had jurisdiction in personam over them. The jury's verdict in favor of Horizon in the consolidated trial conclusively disposed of the controverted issues crucial to both cases, and afforded solid ground for a money judgment in personam against appellants for the amount due and payable to Horizon. Appellants were of course entitled to credit for the amount Horizon received from the registry of the court out of the proceeds of the sale of the yacht as a result of the perhaps irregular proceedings by way of equitable execution which had taken place in the admiralty case (No. 80-6169); and the amount of the judgment against appellants was calculated accordingly.
 
 
 5
 Apparently by inadvertence or clerical mistake, the judgment was entered at the wrong number. It will therefore be modified by striking out the last paragraph thereof and the last two lines of the caption, and as so modified
 
 
 6
 AFFIRMED.
 
 
 7
 CLARK, Circuit Judge, concurring in part and dissenting in part:
 
 
 8
 I agree with the majority's conclusion that the district court had jurisdiction to determine appellants' liability. Nevertheless, I believe that the consequences of our determination that there was diversity jurisdiction have not been fully resolved. Based on a mistaken assumption as to the indisputable nature of the amount of the deficiency, the majority holds that appellants lost their right to a jury determination of damages because, after a separate trial on liability pursuant to Fed.R.Civ.Pro. 42(b), the jury found for the plaintiff. In my view, such an approach contravenes the seventh amendment, and appellants were entitled to a jury trial on the question of damages even though they lost on the question of liability.
 
 
 9
 This case involves two consolidated actions. In May 1979, Horizon determined that appellants had defaulted on their loan and repossessed the yacht. The Spielvogels then commenced the first action in state court, seeking damages from Horizon for conversion of the yacht. Horizon removed the case to federal court and counterclaimed for breach of contract, i.e., nonpayment and default. In April 1980, Horizon commenced the second action, an in rem proceeding, seeking a judicial order permitting sale of the repossessed yacht. Pursuant to the district court's February 9, 1981 order, the Marshal sold the yacht and the proceeds were paid into the Registry of the Court. On June 9, 1981, the Spielvogels' May 1979 action was consolidated with Horizon's May 1980 action.
 
 
 10
 The majority correctly observes that, unless Horizon possessed a "preferred" ship mortgage under 46 U.S.C. Secs. 911 et seq., the in rem proceeding was beyond the district court's admiralty jurisdiction. See 2 Benedict on Admiralty Sec. 71 n. 3. The majority deems it unnecessary, however, to determine whether Horizon's mortgage was a "preferred" or nonmaritime mortgage. The majority reasons that the consolidation of the first action, which the Spielvogels initiated, and the second action, which Horizon instituted, established in personam jurisdiction over the Spielvogels and, therefore, conferred diversity jurisdiction on the district court. I agree with this approach. Even though appellants brought their action in state court and it was Horizon, by filing a removal petition, that technically invoked the district court's jurisdiction, appellants later agreed to the consolidation of their action with the in rem action.[1] It does not seem improper, therefore, to view the consolidated actions as essentially a single proceeding for purposes of jurisdiction. Thus, the district court had personal jurisdiction over appellants and subject matter jurisdiction by virtue of diversity justifying the entry of a judgment in favor of Horizon on the issue of liability.
 
 
 11
 Nevertheless, I feel that the case should be remanded to the district court. If, as the majority assumes, no preferred ship mortgage existed, the district court had no admiralty jurisdiction over Horizon's in rem proceeding. Nonetheless, subject matter jurisdiction existed; the consolidation of the two actions conferred diversity jurisdiction on the district court. Because diversity, not admiralty, jurisdiction existed, appellants were entitled to a jury trial. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360, 82 S.Ct. 780, 782, 7 L.Ed.2d 798 (1962) (in personam suit brought in nonmaritime court under diversity jurisdiction; right to jury trial attaches). In compliance with Fed.R.Civ.Pro. 38(b), appellants demanded in writing "trial by jury on all issues so triable."[2] Furthermore, the statements of appellants' counsel at the Pre-trial Conference indicate that appellants desired a single jury trial on all issues.[3] On January 14, 1982, however, the court, on Horizon's motion[4] and without opposition from appellants,[5] ordered a separate trial pursuant to Fed.R.Civ.Pro. 42(b) on the following issue: "Did the Spielvogels default on their Installment Sales Agreement with Horizon Creditcorp by not making a payment when due?" A separate trial on the issue of default was deemed appropriate under Rule 42(b) because resolution of that question would be dispositive of the consolidated actions: if the Spielvogels defaulted, Horizon had a statutory right to repossess and no conversion could have occurred. Before trial, the parties entered an Amended Pre-trial Stipulation agreeing that "[t]he issue to be tried is [the default question as stated above]." (Supp.R. at 101).
 
 
 12
 On March 5, 1982, the case went to the jury solely on the question of default. Less than one hour after retiring for deliberation, the jury returned a general verdict for Horizon. (R. at 144, TT at 375).[6] The verdict awarded no damages, however, because the court's instructions properly limited the jury's focus to the sole issue that was tried: default. Rather than try the remaining issue of damages to the same or another jury, the district court removed the damages question from the province of the jury altogether. Upon receiving the jury's general verdict, the district court instructed the parties "to collaborate on preparing a final judgment, forwarding it to the Court as soon as possible." (TT at 375). Apparently unable to collaborate on a final judgment, each party submitted a proposed judgment of their own. Horizon's proposal awarded $82,452.20 as to principal, interest and other charges demonstrated by supporting affidavits. Appellants' proposal, on the other hand, awarded only the funds previously deposited in the court registry and, as to the deficiency, provided as follows:
 
 
 13
 2. ORDERED AND ADJUDGED, that the Court reserves jurisdiction to determine the amount of deficiency, if any ... upon appropriate proofs and submissions of memorandum of law by the parties....[7]
 
 
 14
 On March 29, 1982, the court entered judgment against appellants in the amount requested by Horizon pursuant to its motion. (R. at 172).
 
 
 15
 Generally, the amount of damages is a question of fact to be resolved by the jury if the right to a jury trial attaches.[8] This rule obtains even where the damage question has been separated from liability under Rule 42(b).[9] Because the district court's jurisdiction was based upon diversity, the right to a jury trial existed, and nothing in the record indicates that appellants waived their right to a jury determination of damages. Therefore, I find the district court's award improper.
 
 
 16
 By analogizing the district court's award of damages in this case to "liquidated damages," the majority assumes that the amount of damages was not disputable. The majority bases its assumption upon the fact that the jury determined that appellants had defaulted. Because appellants defaulted, the majority holds, no controversy over damages existed and, therefore, the district court needed only to refer to the terms of the written agreement to determine an award. Cf. Hudson Rug Refinishing and Cleaning Corp. v. Prime, 115 F.2d 615, 618-19 (7th Cir.1940) (To a special verdict allowing certain items of damages, the court may add other items as to which the parties have stipulated there is no controversy).
 
 
 17
 The damages in this case, however, are not so easily calculated or indisputable. Because this case involves an in personam diversity action concerning a nonmaritime mortgage, appellants have available to them whatever rights exist under applicable state law. See Security Bank of Oregon v. Levens, 257 Or. 630, 480 P.2d 706 (1971). Appellants should be afforded their right to prove to the jury that the amount of deficiency should be reduced for whatever reasons provided by New Jersey law,[10] notwithstanding the contract.[11] Nonetheless, the district court relied on Horizon's proposed judgment based upon the terms of the written agreement to determine the amount of damages. The district court heard no evidence as to possible mitigating factors, even though the Spielvogels' proposed judgment made it clear that appellants anticipated the opportunity to present such evidence.[12] In my view, therefore, appellants had the right to contest the amount of damages, and, therefore, the district court's determination as to damages based solely upon reference to the written agreement was error.[13] Accordingly, I would affirm as to appellants' liability, but would remand the case to the district court for a determination as to damages.
 
 
 
 *
 Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 In the court's charge the jury was instructed to determine:
 "1. When was the first installment payment due?
 
 
 [2]
 If Michael R. Spielvogel and Mary E. Spielvogel failed to make the payment when it was due?
 
 
 [3]
 If so, did their failure to pay the installment at that time constitute a default of the installment contract?" (Tr. 366)
 
 
 [2]
 It is likewise unnecessary to consider whether, if the requisites of Sec. 922 were complied with subsequently and before the date of judgment (though there is nothing in the record to show that this is the case), any failure to have complied with them before the suit was filed was cured. Ordinarily the jurisdiction of a federal court must be shown to exist at the time of filing suit
 
 
 [1]
 Transcript, Pre-Trial Conference, No. 79-6309 (S.D.Fla., June 8, 1981), p. 5 [hereinafter "PTC Transcript"]. See also Trial Transcript ("TT") at 6
 
 
 [2]
 See Plaintiff's and Counterdefendant's "Answer to Counterclaim of Horizon Creditcorp," No. 79-6309 (S.D.Fla. Sept. 14, 1979), p. 5
 
 
 [3]
 PTC Transcript at 9-11. Appellants' counsel even desired that the question of attorney's fees go to the jury. Id
 
 
 [4]
 Supplemental Record ("Supp.R.") at 96
 
 
 [5]
 Id. at 98
 
 
 [6]
 The district court determined that the jury should return a general verdict, Record ("R.") at 323, and distributed general verdict forms to the jurors. (R. at 369-70). Nonetheless, the court issued oral interrogatories as to three aspects of the default issue during the charge. (R. at 366). Furthermore, the court issued to each juror written copies of the charge, which contained the interrogatories. (R. at 358-60; Supp.R. at 145-58). The jury, however, returned only the general verdict. I reserve judgment as to whether this "procedural imbroglio" complies with Fed.R.Civ.Pro. 49(b). See Turchio v. D/S A/S Den Norske Africa, 509 F.2d 101, 105 (2d Cir.1974)
 
 
 [7]
 Appellants' Proposed Judgment did not appear in the record on appeal. Horizon's counsel, however, supplied this court with a copy of appellants' proposal as it was served on him
 
 
 [8]
 C. McCormick, Damages 24 (1975)
 
 
 [9]
 Indeed, courts have long struggled with the question whether a second jury can determine damages after another jury has found liability in a bifurcated trial under Rule 42(b). Compare Franchi Constr. Co. v. Combined Ins. Co. of Am., 580 F.2d 1 (1st Cir.1978) (separate trials before two juries improper where issues to be tried are not separate and distinct), with In re Master Key Antitrust Litigation, 70 F.R.D. 23 (D.Conn.), appeal dismissed, 528 F.2d 5 (2d Cir.1975) (no 7th amendment violation where issue tried to second jury was distinct and separable). Implicit in these decisions is the notion that, even after the question of liability is tried separately from damages, the question of damages must still be determined by some jury, not by the court. I express no opinion as to whether the seventh amendment would have required the district court to submit the damage question to the same jury
 
 
 [10]
 The mortgage agreement provided that New Jersey law shall govern nonmaritime matters relating to the mortgage. See Exhibit G, Sec. 4.8
 
 
 [11]
 Only if, as a matter of law, the amount of deficiency could not be attacked, should the district court's judgment as to damages stand. Such is not my reading of New Jersey law. For example, New Jersey law provides that if a secured party fails to give the debtor adequate notice of sale, the creditor loses his right to a deficiency unless he sustains the shifted burden of proving "that the sale resulted in the fair and reasonable value" of the collateral. Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402, 404 (1971), aff'd, 118 N.J.Super. 521, 288 A.2d 872. See T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162, 166-67 (1969). Admittedly, the New Jersey rule as to notice was born out of a general spirit of "commercial reasonableness," Conti, supra, 276 A.2d at 404, and Horizon maintains that the sale was, under N.J.S.A. 12A:9-507(2), conclusively presumed reasonable because it was "approved in a judicial proceeding." I have some question about the validity of such a presumption, however, where, as here, the judicial proceeding which approved the sale was an in rem action in which the district court lacked admiralty jurisdiction. In any event, the notice issue is merely illustrative of the types of challenges appellants might have raised had they not been denied the opportunity to do so, and I do not imply that this is the only challenge available
 
 
 [12]
 The majority states that "[a]ppellants did not set forth ... any specific objections to the figures as computed in appellee's affidavit [in support of its proposed judgment], or any serious contentions with respect to the quantum of damages." Appellants' proposed judgment, however, clearly indicates that they disputed the amount of damages awardable and anticipated a hearing on the issue. See text accompanying note 7, supra. Because the trial was limited to the issue of default, and because appellants anticipated an opportunity to present evidence on the question of damages, it is only logical that the record would not yet contain any "serious contentions" with respect to damages. Furthermore, the majority's suggestion that appellants had no right to a jury trial because they failed to "formulate any issues regarding the amount of damages" fails to recognize that damages are a question of fact for the jury. See note 8 and accompanying text, supra. If, as the majority intimates, the damages issue raised no material question of disputed fact, the issue should have been decided on summary judgment--after both parties had submitted memoranda and the court held a hearing. Neither party moved for summary judgment, however, and the former Fifth Circuit expressly ruled that a district court may not enter summary judgment in the absence of such a motion. See Capital Films Corp. v. Charles Fries Prods., 628 F.2d 387, 390-91 (5th Cir.1980). Absent a summary judgment motion, therefore, denying appellants a jury trial on the question of damages on the grounds that they failed to formulate a genuine fact question contravenes the rule of Capital Films
 
 
 [13]
 Cf. Bass v. Hoagland, 172 F.2d 205, 209 (5th Cir.) (jury trial was requested and not waived; therefore, in the absence of a jury verdict or even an evidentiary hearing on the question of damages, district court denied defendant due process of law by awarding plaintiff the exact amount of damages prayed for), cert. denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949)