Edgar Alan RICKARD, d/b/a Trader Publications of Alabama, Plaintiff-Appellant,

v.

AUTO PUBLISHER, INC., a corporation, Defendant-Appellee.

No. 83–7227.

United States Court of Appeals, Eleventh Circuit.

July 2, 1984.

John Martin Galese, Birmingham, Ala., for plaintiff-appellant.

Peck & Slusher, John R. Benn, Rodney B. Slusher, Florence, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Appellant, Edgar Alan Rickard, d/b/a Trader Publications of Alabama (Rickard), appeals from a judgment in an unfair competition action in which the district court found that appellee, Auto Publisher, Inc. (Auto Publisher), had misappropriated appellant's unregistered trademark and had violated a preliminary injunction, but denied Rickard's request for damages and attorneys' fees. The court had bifurcated the trial such that the question of unfair competition and contempt would be tried first and the question of relief addressed in a later hearing. The court conducted a non-jury trial and found for appellant on the unfair competition and contempt matters but declined to hold a hearing on the question of damages and attorneys' fees, finding that, as a matter of law, appellant was not entitled to such relief. Appellant contends in this appeal that the district court erred in denying him the opportunity to prove his entitlement to the relief sought.

### I.

In March 1979, appellant purchased from Trader Publications for $7,500 a license to publish "Auto Trader" magazine in and around Birmingham, Alabama. Auto Trader is a local weekly publication advertising used vehicles for sale. The publisher derives its income from the magazine's advertisers and from sales at convenience stores. Initially, Rickard sold Auto Trader in Jefferson, Shelby, Etowah, Calhoun, St. Clair, Cullman, Walker, Winston and Morgan Counties. By late 1980, Rickard had penetrated Madison, Talladega, Montgomery, Elmore, Bibb, Tuscaloosa, Hale, Jackson, DeKalb and Blount Counties. Rickard's licensing agreement was then amended, extending its territory to all of "North Alabama."

In 1980, appellee began publishing a magazine called "Auto Weekly Publisher" in Lauderdale and Colbert Counties. Like Rickard's magazine, appellee's publication advertised used vehicles for sale. Appellee subsequently extended its sales into counties in which Rickard was already selling his magazine.

In September 1982, Rickard filed suit for relief under the Lanham Act, 15 U.S.C. § 1051, et seq. (1982), the Alabama Fair Trade Practices Act, Ala.Code § 8–19–1, et seq. (Supp.1983), and under the state common law doctrine of unfair competition. Specifically, Rickard sought a preliminary and permanent injunction, compensatory and exemplary damages, an accounting of appellee's profits, attorneys' fees, and costs. Rickard had no copyright or registered trademark protecting his magazine; however, appellant alleged that the manner, design and style of the publication was his distinctive trademark, and that appellee had misappropriated that trademark.

On October 14, 1982, the district court held a hearing on Rickard's request for a preliminary injunction. On October 21, 1982, the court entered its findings of fact and preliminarily enjoined Auto Publisher. Among these findings were the following: (1) Rickard and appellee compete in many of the same counties; (2) the magazines shared many similar features, and recent issues were increasingly similar; (3) there had been actual confusion by members of the buying public; (4) because appellee's infringement did not have to be intentional to support the issuance of a preliminary injunction, the court made "no finding at this time as to intentional wrong"; (5) Rickard's format, layout and method were suf-

ficiently unique and distinctive to warrant protection under the Lanham Act; and (6) Rickard's damages were possibly irreparable, though difficult to calculate.

On November 5, 1982, Rickard filed a motion for an order to show cause why Auto Publisher should not be held in contempt for violating the preliminary injunction issued on October 21. This motion was consolidated with the trial of the unfair competition claim on the merits. Trial was set for January 12, 1983.

On the day of trial, the district court entered a pretrial order. That order, first, set forth the parties' positions, stating, *inter alia*, that appellant sought "an accounting for all profits earned by [appellee], attorney's fees, treble damages, punitive damages and costs...." Further, the order specified that a non-jury, bifurcated trial would be held. The court would conduct the first part on January 12 to determine liability and decide Rickard's motion to show cause. The second part of the trial would determine appellee's profits, attorney's fees, costs and other damages in a later hearing.

After conducting the first part of the bifurcated trial but before resetting the matter for a hearing on damages, the court entered additional findings of fact and conclusions of law. With respect to contempt, the court found appellee actually guilty of civil contempt because it continued to distribute its magazine after the issuance of the preliminary injunction without sufficient alterations and because appellee failed to instruct convenience store operators to refrain from placing appellee's magazine in appellant's display racks. The court noted, however, that appellee eventually did make significant changes in its magazine, and that any confusion which existed at the time of the issuance of the preliminary injunction had now been eliminated or reduced to a negligible level. Furthermore, if any confusion presently existed, it was limited to Jefferson County. The court, however, awarded no actual damages for appellee's contempt, because appellant "offered no proof of any damage

which he may have sustained by virtue of the violation of the preliminary injunction...." The court, therefore, imposed a civil contempt fine in the amount of $750, payable to Rickard.

With respect to the merits of the unfair competition action, the court found, first, that appellant had withdrawn all of its pendent claims under Alabama law. In addressing appellant's Lanham Act claim, the court found that, although the degree of similarity between appellant's and appellee's magazines which originally existed "indicate[d] an intent to trade upon [appellant's] name or to 'palm off' [appellee's] magazine as [appellant's]," appellant's efforts to redesign its magazine since the issuance of the preliminary injunction had reduced the likelihood of confusion to a permissible level. Accordingly, the district court refused to enjoin appellees from publishing in all of North Alabama, as requested by appellant, and instead limited the injunction only to those counties specified in the preliminary injunction.

Notwithstanding the fact that the district court had separated the question of damages from that of liability and had indicated that relief would be determined in a later hearing, the court ruled on damages. Finding it "virtually impossible to ascertain with any degree of certainty the amount of damage, if any, [appellant] has sustained as a proximate result of the Lanham Act violation ...," the court denied Rickard's request for damages. The court also denied attorneys' fees, concluding that fees are awardable only in actions involving registered marks, and Rickard's mark was unregistered.

On February 2, 1983, Rickard filed a motion for new trial raising as his chief contention that, due to the bifurcated nature of the trial, Rickard had never had an opportunity to put forth evidence as to damages. Appellant also challenged the court's conclusion that he had voluntarily dismissed all state claims. In an order denying a new trial, the court admitted that the pretrial order contemplated a bifurcated trial for liability and damages and

further agreed that Rickard had not withdrawn his state common law claims; nevertheless, the court affirmed its earlier conclusion that Rickard was not entitled to damages. First, he could not obtain an accounting of appellee's profits under the Lanham Act because the only provision of the Act allowing such an award, § 35, 15 U.S.C. § 1117, applied only in actions involving registered marks. Second, as described in the pretrial order, none of the relief requested, including an accounting of profits, was obtainable under the Alabama common law. For these reasons, the district court found that a damages trial was unnecessary.

Finally, the court further explained its reason for denying attorneys' fees. The court reasserted that § 35 of the Lanham Act, which authorized attorneys' fees, applied only in actions involving registered trademarks. Alternatively, the court noted that, even if § 35 applied to unregistered marks, the Act permitted attorneys' fees awards only in "exceptional cases," and the instant case was not "exceptional."

Accordingly, on March 10, 1983, Rickard's motion for new trial was denied. On March 24, 1983, Rickard filed a notice of appeal. We have jurisdiction. 15 U.S.C. § 1121 (1982).[1]

## II.

Our disposition of this appeal requires us to resolve the following issues. First, with respect to the merits of the trademark action, whether § 35 (15 U.S.C. § 1117), which catalogues the remedies available in an infringement action under the Lanham Act, is applicable to suits under § 43(a) (15 U.S.C. § 1125(a)) not involving registered marks, even though § 35, by its terms, applies to a violation of the rights of a "registrant." Second, with respect to the contempt ruling, whether the district court erred in denying an award of damages and attorneys' fees on the grounds that appellant failed to produce sufficient evidence to support such an award, where the trial of the case had been bifurcated and only the issues of liability had thus far been tried.

### A. *The Unfair Competition Action*

■ Rickard brought this action seeking relief from appellee's alleged misappropriation of appellant's unregistered mark. Congress provided such protection for unregistered trademarks in § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits a "false designation of origin" but does not require a federal registration. Under this section, any person who violates another's established rights in an unregistered trademark by employing a false designation of origin "shall be liable to a civil action."[2] Section 43(a), however, does not

1. If an appellate court perceives a potential defect in federal subject matter jurisdiction, it is obligated to raise the issue *sua sponte*. *See Burgess v. Charlottesville Sav. & Loan Ass'n*, 477 F.2d 40, 43 (4th Cir.1973). We note the presence of subject matter jurisdiction. In actions involving unregistered trademarks, the jurisdiction of the federal courts extends only to cases in which a false designation of origin has been "transported or used in commerce." 15 U.S.C. § 1125(a) (1982) (reproduced in full at note 2, *infra*). "The word 'commerce' means all commerce which may lawfully be regulated by Congress," but "purely intrastate disputes ... are not subject to the Lanham Act's regulation...." *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 838 (11th Cir.1983). In the instant case, appellant has made no allegation that the instant case satisfies the "in commerce" jurisdictional requirement of the Lanham Act. The evidence adduced at trial, however, reveals that both the buyers which respond to the advertisements, and the sellers which place them, occa-

sionally are from across state lines. Therefore, this case satisfies the "in commerce" jurisdictional requirement under the law of this circuit, which requires only that there be an "effect" on commerce. *See Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir.1983) ("Advertising that affects interstate commerce and solicitation of sales across state lines ... is ... commerce within the meaning of Lanham Act"). Although appellants did not make the proper jurisdictional allegation in their complaint, Federal Rule of Civil Procedure 15(b) permits this court, in view of the evidence, to find the existence of subject matter jurisdiction.

2. Section 43(a) provides:
 Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe

explicitly provide any remedies. Consequently, although courts have had no trouble in deciding that Congress intended to create a new federal remedy in enacting § 43(a),[3] considerable confusion has developed in determining the nature and source of the remedy Congress made available. The answers to these questions could lie in federal statutory or common law, or in state common law. Because the intent of Congress in enacting the Lanham Act was to establish a comprehensive and simplified regulatory scheme for trademark protection,[4] our first task is to determine whether the relief available in civil actions under § 43(a) can be gleaned from the statute, itself.

Although § 43(a) is silent as to relief, § 35 contains an exhaustive catalog of remedies available in trademark infringement actions:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Lanham Act § 35, 15 U.S.C. § 1117 (1982). The question becomes, then, whether the relief specified in § 35 is available in actions under § 43(a) involving unregistered trademarks. This difficult question of statutory construction requires us to apply systematically various interpretive aids, beginning, of course, with those rules relating to the precise words Congress enacted.

### 1. Statutory Language

 As the opinion of the district court below demonstrates, a cogent argument can be made, based upon the language of the statute, that § 35 does not extend to § 43(a) suits. First, as an elementary principle of statutory construction, a reviewing court must accord primacy to the plain meaning of the language Congress has en-

---

or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. § 1125(a) (1982). Although § 43(a) does not include all claims of unfair competition in interstate commerce, it is clear that the unauthorized use of an unregistered trademark can constitute a violation of § 43(a). *See Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th

Cir.1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). *See also Smith v. Montoro,* 648 F.2d 602, 605 & n. 3 (9th Cir.1981) (and cases cited therein).

**3.** *See, e.g., Norman M. Morris Corp. v. Weinstein,* 466 F.2d 137, 141 (5th Cir.1972) ("The intent of Congress in enacting § 1125(a) [§ 43(a)] ... was clearly to fashion a new federal remedy against a particular kind of unfair competition that the common law had effectively protected ..."). For a discussion of the history of the development of § 43(a) suits in the former Fifth Circuit, *see* Lunsford & Cohrs, *Trademark Protection: Judicial Inconsistency in the Fifth Circuit,* 32 Merc.L.Rev. 1167, 1214–17 (1981).

**4.** *See* S.Rep. No. 1333, 79th Cong., 2d Sess. 3, *reprinted in* [1946] U.S.Code Cong.Serv. 1274 [hereinafter cited as *Senate Report*]; H.R.Rep. No. 603, 78th Cong., 1st Sess. 2 (1943).

acted.[5] In the instant case, the statute in question states that the specified remedies are available "[w]hen a violation of any right *of the registrant* of a mark *registered* in the Patent and Trademark Office shall have been established." 15 U.S.C. § 1117 (1982) (emp. added). Thus, under the "plain-meaning" rule of statutory construction, § 35 is, arguably, limited to infringement of a federally registered trademark.[6]

■ An obvious prerequisite to application of the "plain meaning" rule of statutory construction is that the statutory language be unambiguous.[7] One reliable *indicium* of the clarity of Congress' language is consistent judicial interpretation of the provision in question.[8] The confusion which the question presently before this panel has generated in the courts and in the legal community in general belies the contention that Congress has spoken so clearly as to make it unnecessary to look beyond the "plain meaning" of the language to ascertain Congress' intent. One

court has expressly held that § 35 relief applies in § 43(a) actions.[9] Other courts have reached the same result by assuming, without deciding, that § 35 relief was available.[10] Still others have sanctioned damage awards in § 43(a) actions without stating any basis whatsoever for such an award.[11] Finally, rounding out the hodgepodge of judicial inconsistency, the court below and a few other courts have held that § 35 is inapplicable to § 43(a) suits.[12] Commentators are also divided.[13] Under these circumstances, we are justified in looking beyond the language of the statute to ascertain Congress' intent.[14] Indeed, our failure to do so would merely perpetuate the confusion that has resulted from previous courts' failure to undertake such an analysis. Therefore, because the starting point of statutory construction—the statutory language—is not dispositive of the issue in this case, we turn to other interpretive aids to determine whether § 35 remedies are available in § 43(a) actions.

---

**5.** *See Aaron v. SEC*, 446 U.S. 680, 700, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980) (in absence of conflict between statute's plain meaning and legislative history, words of statute must prevail); *Hills v. Commissioner*, 691 F.2d 997 (11th Cir.1982), *reh'g denied*, 697 F.2d 1094; *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531 (D.C.Cir.1978).

**6.** Relying on *A.S. & W. Prods., Inc. v. Atlantic Steel Co.*, 207 U.S.P.Q. 251, 251–52 (W.D.N.Y. 1979), the court below expressly adopted this reasoning. *See also* note 12 and accompanying text, *infra*.

**7.** *See Jones v. Metropolitan Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1378–79 (11th Cir. 1982).

**8.** *See Maine v. Thiboutot*, 448 U.S. 1, 6 n. 4, 100 S.Ct. 2502, 2505 n. 4, 65 L.Ed.2d 555 (1980).

**9.** *Metric & Multistandard Components v. Metric's*, 635 F.2d 710 (8th Cir.1980).

**10.** *E.g., Jellibeans, supra*, note 1; *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978); *N. Hess & Sons, Inc. v. Hess Apparel, Inc.*, 216 U.S.P.Q. 721, 737 (D.Md.1982); *Stone v. Creative Comm'ns*, 216 U.S.P.Q. 261 (N.D.Ill.1981); *RCA Records v. Kory Records*, 197 U.S.P.Q. 908 (E.D. N.Y.1978); *Cargo Safe, Inc. v. Bruest Indus., Inc.*, 200 U.S.P.Q. 445, 447–48 (D.Kan.1976); *Electronics Corp. of Am. v. Honeywell, Inc.*, 358

F.Supp. 1230 (D.Mass.), *aff'd*, 487 F.2d 513 (1st Cir.1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974).

**11.** *E.g., Friend v. H.A. Friend Co.*, 416 F.2d 526 (9th Cir.1969); *Hesmer Foods, Inc. v. Campbell Soup Co.*, 346 F.2d 356, 359 (7th Cir.1965).

**12.** Record (R.) at 36; *A.S. & W. Prods., Inc. v. Atlantic Steel Co.*, 207 U.S.P.Q. 251 (W.D.N.Y. 1979); *Santucci Constr. Co. v. Carlo Santucci, Inc.*, 200 U.S.P.Q. 783 (N.D.Ill.1978).

**13.** *Compare* Callmann Unfair Comp., Trademarks & Monopolies § 22.48 n. 32 (asserting that § 35 applies to § 43(a) actions) *and* Koelmay, *Monetary Relief for Trademark Infringement Under the Lanham Act*, 72 T.M.Rep. 458, n. 3 (1982) (reasoning that because the legislative history reveals no intent to treat unregistered marks differently from registered marks, courts are correct in conforming § 43(a) remedies to § 35 relief) *with* Fitzpatrick, *Damages in Trademark and Patent Infringement Litigation*, 8 APLA Q.J. 29, 31 (1980) (plaintiff must own a federally registered trademark to recover damages under § 35).

**14.** *Cf. Alabama Power Co. v. FERC*, 685 F.2d 1311, 1316 (11th Cir.1982) (where public companies' interpretation differed from that of private interests', statute was sufficiently ambiguous to resort to legislative history).

## 2. *Legislative History*

The legislative history of the Lanham Act reveals an interesting and somewhat puzzling development of § 35. On June 28, 1943, the House passed a bill, H.R. 82, but the bill contained language noticeably different from current § 35, reading as follows:

> Sec. 35. Whenever the plaintiff shall have established his right to relief in any civil action arising under this act, he shall be entitled ... to recover ....[15]

After passing the House, H.R. 82 was referred to the Senate Committee on Patents, and a subcommittee held hearings.[16] On December 4, 1944, the bill was reported in the Senate with amendments.[17] The Senate deferred action on H.R. 82,[18] however, and the bill was not reached again before the end of the congressional session.

Representative Lanham reintroduced H.R. 82 in the next session as H.R. 1654.[19] The bill was referred to the House Committee on Patents,[20] which submitted a report to the House recommending that H.R. 1654 pass with certain nonsubstantive amendments.[21] On March 5, 1945, the House passed H.R. 1654, but the wording of § 35 was different from that contained in H.R. 82, which the House had passed two years earlier:

> Sec. 35. When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this act, the plaintiff shall be entitled....[22]

With other minor amendments not relevant for present purposes, H.R. 1654 became the Lanham Trademark Act of 1946.

The change from the earlier bill, which made § 35 relief available to any plaintiff establishing a right to relief under the Act, to the later version, which apparently made such remedies available only to "a registrant of a mark registered in the Patent Office," is certainly noteworthy. In our view, however, this semantic change does not control the question whether § 35 relief is available in § 43(a) suits involving unregistered trademarks. The legislative history offers no explanation for the change. Neither the 1944 Senate Hearings[23] and Report[24] nor the 1945 House Report[25] even mention the modification. Furthermore, nowhere does the legislative history of the Lanham Act suggest that different policies were to govern relief for actions involving unregistered trademarks under § 43(a) as opposed to actions involving registered trademarks under § 32(1).[26] Under these

**15.** H.R. 82, 78th Cong., 1st Sess. (1943), 89 Cong. Rec. 6670, 6676 (June 28, 1943).

**16.** *Trade-marks: Hearings on H.R. 82 Before the Subcomm. of the Senate Comm. on Patents,* 78th Cong., 2d Sess. (1944) [hereinafter cited as *Senate Hearings*].

**17.** S.Rep. No. 1303, 78th Cong., 2d Sess. (1944).

**18.** 90 Cong.Rec. 9437, 9440 (Dec. 14, 1944).

**19.** 91 Cong.Rec. 431 (Jan. 22, 1945).

**20.** H.R.Rep. No. 219, 79th Cong., 1st Sess. (1945) [hereinafter cited as *House Report*] makes no mention of any committee hearings on H.R. 1654, and our research has uncovered no evidence indicating that hearings were held. If hearings were in fact held, apparently no transcript was printed.

**21.** *See House Report,* note 20, *supra,* at 1 (noting that all amendments reported therein "are simply for the purpose of correcting typographical

or clerical errors. No question of principle or substance is involved").

**22.** H.R. 1654, 79th Cong., 1st Sess. (1945), 91 Cong.Rec. 1718, 1722 (March 5, 1945).

**23.** *Senate Hearings, supra* note 16. See, in particular, pages 122–27 (statement of Chester L. Davis) and pages 145–50 (statement of Elliott H. Moyer during testimony of L.H. Thomson), where specific amendments are proposed and discussed, none of which pertain to § 35.

**24.** *See* note 17, *supra.*

**25.** *See* note 20, *supra.*

**26.** In a law review article which reflects a study of the Lanham Act's legislative history at least as thorough as our own, the author reaches the same conclusion. *See* Koelmay, note 13, *supra,* at 458–59 n. 3 ("There is no indication in the legislative history that different policies were to govern relief under § 43(a) ...").

One witness before a Senate Hearing made a very brief reference to "several sections [in H.R. 82] which relate to relief that a *registrant* may

circumstances, we decline to attach controlling significance to a word change that is neither explained nor even mentioned in the legislative history. Like the statutory language, the legislative history is, therefore, not dispositive of the issue at hand.

### 3. *Purpose and Intent Analysis*

■ Because neither the statutory language nor the legislative history are dispositive of the issue, we guide ourselves generally by the purposes of the Lanham Act and the intent of Congress in enacting it.[27] As a general rule, "the cardinal purpose, intent or purport of the whole act shall control," and all parts shall "be interpreted as subsidiary and harmonious."[28] In order to provide a harmonious relationship between § 35 and § 43(a), therefore, we must ascertain the Lanham Act's underlying purposes.

The House Report submitted by Representative Lanham from the Committee on Patents contains a concise and elucidating statement of the purposes of H.R. 1654, which later became the Lanham Trademark Act:

> This bill [H.R. 1654] attempts to accomplish these various things:
>
> 5. Generally to simplify trade-mark practice . . . .

> The theory once prevailed that protection of trade-marks was entirely a State matter and that the right to a mark was a common-law right. This theory was the basis of previous national trade-mark statutes. . . . It is obvious that the States can change the common law with respect to trade-marks and many of them have, with the possible result that there may be as many different varieties of common law as there are States. A man's rights in his trade-mark in one State may differ widely from the rights which he enjoys in another.

> However, trade is no longer local, but is national. Marks used in interstate commerce are properly the subject of Federal regulation. It would seem as if national legislation along national lines securing to the owners of trade-marks in interstate commerce definite rights should be . . . enacted now.

> [A] sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them.[29]

Thus, it is clear that, without distinguishing between registered and unregistered marks, Congress intended (1) to simplify trademark practice, (2) to establish uniform regulation of trademarks thereby eliminating the possibility that remedies would vary from state to state, and (3) to provide the greatest protection possible for all trademarks used in interstate commerce.

In view of this explicit statement of the purpose of the Lanham Act, we conclude that § 35 relief applies to § 43(a) actions involving unregistered trademarks. To hold otherwise would undermine Congress' goals of simplifying trademark practice, establishing uniformity and providing ample relief. First, if we were to hold that § 35 relief did not apply to § 43(a) actions, the courts would have to develop as a matter of common law the relief available in § 43(a) actions. Although today this can be accomplished through federal common law, Congress' goals of simplicity and uniformity are much more efficiently and effectively accomplished by affording holders of unregistered trademarks certain and

secure." *Senate Hearings, supra* note 16, at 29 (statement of Henry J. Savage) (emp. supplied). Read in context, however, the witness' statement cannot be construed to suggest that those sections provide relief *only* to owners of registered trademarks. Moreover, the remark is a very isolated, ambiguous comment, and it is not even clear to what "sections" the witness was referring.

27. *Cf. Husserl v. Swiss Air Transport Co.,* 388 F.Supp. 1238, 1249–50 (S.D.N.Y.1975) (where

language of provision and legislative history are unenlightening, "purpose and intent analysis itself is very useful").

28. C. Sands, *Statutes and Statutory Construction* § 46.05 (4th ed. 1973). *See Weinberger v. Hynson Westcott & Dunning, Inc.,* 412 U.S. 609, 631–32, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973).

29. *See House Report, supra* note 20, at 4.

uniform relief under § 35.[30] Second, Congress' intention to provide trademarks "the greatest protection that can be given them" is, with respect to unregistered trademarks, even more dependent today upon our holding that § 35 relief is available in § 43(a) actions than it was at the time the Lanham Act was enacted. Originally, the Act did not provide for the award of attorneys' fees,[31] and the Supreme Court expressly held that no award of attorneys' fees could be implied.[32] The Act has been amended, however, and now permits a court "in exceptional cases [to] award reasonable attorneys' fees to the prevailing party."[33] Hence, unless § 35 relief applies to § 43(a) actions, attorneys' fees could not be awarded, and unregistered trademarks would not "receive nationally the greatest protection that can be given them." For these reasons, we conclude that the express purposes of the Lanham Act are best served by applying § 35 remedies to § 43(a) actions, and we so hold.[34]

### B. The Contempt Ruling

The district court preliminarily enjoined Auto Publisher from continuing its pattern of unfair competition pending the trial on the merits. Finding that appellee continued to publish additional magazines without sufficient alteration and to place its magazines in sales racks owned by Rickard, the district court determined that appellee had violated the preliminary injunction. The court, however, awarded no damages and no attorneys' fees; rather, the court imposed a civil fine in the amount of $750, to be paid to Rickard. In support of this award, the court stated that Rickard "offered no proof of any damage which he may have sustained by virtue of the violations of the preliminary injunction ...."

■ The district court found appellee in civil contempt. Civil contempt can be either coercive, which is intended to make the recalcitrant party comply, or compensatory, which "reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance. This [reimbursement] includes losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance."[35] By the

---

**30.** Even if this panel were to decide that federal common law would adequately serve Congress' goals, such a conclusion would not reflect Congress' actual intent. In passing the Lanham Act, Congress acted under the assumption that there was no federal common law. *See House Report, supra* note 20, at 4 ("Many years ago the Supreme Court held and has recently repeated that there is no Federal common law"); *Senate Report, supra* note 4, at 5, *reprinted in* [1946] U.S.Code Cong.Serv. 1274, 1276–77 (same). While federal common law may very well have existed, *see, e.g., Hinderlider v. La Plata River & Cherry Creek Ditch Co.,* 304 U.S. 92, 110, 58 S.Ct. 803, 811, 82 L.Ed. 1202 (1938), the correctness or incorrectness of the assumption is immaterial; the fact remains that Congress relied on the assumption in enacting the legislation, and such reliance indicates that Congress had no intention of leaving to the courts the question of relief to develop as a matter of federal common law.

**31.** July 5, 1946, c. 540, Title VI, § 35, 60 Stat. 439.

**32.** *Fleischmann Distill. Corp. v. Maier Brewing Co.,* 386 U.S. 714, 720–21, 87 S.Ct. 1404, 1408–09, 18 L.Ed.2d 475 (1967).

**33.** Pub.L. 93–600, § 3, 88 Stat. 1955, codified at 15 U.S.C. § 1117.

**34.** In holding that § 35 applies to Lanham Act violations involving unregistered marks, we come to the same conclusion that the Eighth Circuit expressly reached in *Metric, supra,* note 9. The Eighth Circuit's holding, however, was based upon its conclusion that § 35 provides the exclusive relief available in all Lanham Act cases. 635 F.2d at 715–16. Because the question of exclusivity is not presently before this panel, we do not embrace the reasoning of the *Metric* decision. Nonetheless, to the extent that there is support for the contention that § 35 relief is exclusive, *see, e.g.,* H.R.Rep. No. 603, *supra* note 4, at 6–8 (stating, that H.R. 82 would repeal § 10 of the Trademark Act of 1881, which provided "[t]hat nothing in this act shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of this act had not been passed"), the *Metric* opinion provides additional support for our holding that § 35 relief applies in § 43(a) actions involving unregistered trademarks.

**35.** *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir.1976).

time the district court found that the appellee was in civil contempt for having violated the preliminary injunction, Auto Publisher had already sufficiently modified its magazine to satisfy the district court's concerns. Therefore, because compliance was no longer at issue, the finding of contempt was compensatory, not coercive.

 The district court was correct in noting that appellant failed to offer any evidence of damages to support a compensatory award, but, under the circumstances of this case, the district court's denial of compensatory relief was premature. This case had been bifurcated such that the merits of the unfair competition claim and the contempt charge would be tried first, and damages would be determined at a later hearing. Thus, it comes as no surprise that appellant failed to proffer any evidence of damages. Thus, the district court effectively denied appellant an opportunity to present such evidence.[36]

### III.

We conclude that the relief specified in § 35 of the Lanham Act is available in actions under § 43(a) involving unregistered trademarks. We further conclude that the district court erred in denying appellant the opportunity to present evidence which would support a compensatory civil contempt award. Accordingly, the judgment of the district court is reversed, and the case is remanded for a hearing on damages as to both the unfair competition claim and the civil contempt ruling.[37]

REVERSED and REMANDED.

**36.** *Cf. Horizon Creditcorp v. Oil Screw Innovation I*, 730 F.2d 1389 at 1395 n. 12 (11th Cir. 1984) (Clark, J., concurring and dissenting in part) (where issue of liability had been separated from question of damages, district court erred in denying losing party the opportunity to present evidence which would mitigate damage award).

**37.** The district court has already found that the unfair competition claim did not present an "exceptional case[ ]" within the meaning of the Lanham Act; therefore, the only unresolved

question as to attorneys' fees in this action involves the contempt ruling. Consideration of appellant's right to other relief specified in § 35, however, is appropriate upon remand.

Although we find § 35 remedies applicable to § 43(a) suits, we do not suggest that § 43(a) plaintiffs will always be entitled to the full panoply of § 35's remedies. An accounting of profits under § 35 would often be inappropriate in § 43(a) cases involving neither unjust enrichment nor diverted trade. *See* Koelmay, *supra* note 13, at n. 3.